UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-CV-40008-RGS

IN RE: RADIANSE, INC., Debtor

VERSUS TECHNOLOGY, INC., Appellant

v.

CRAIG R. JALBERT, Liquidating Trustee of Radianse, Inc., Appellee

MEMORANDUM AND ORDER
ON APPEAL FROM SUMMARY JUDGMENT

July 1, 2011

STEARNS, D.J.

In this bankruptcy appeal, appellant Versus Technology, Inc. (Versus) seeks to reverse the Bankruptcy Court's determination on summary judgment that debtor Radianse, Inc. (Radianse)[1] is not obligated to pay Versus royalties pursuant to a third-party Reseller Agreement. This court heard oral argument on July 1, 2011.

BACKGROUND

Radianse, a Delaware corporation headquartered in Andover, Massachusetts, sold real-time location systems (RTLS) technology, designed to track medical

---

[1] On March 4, 2011, this court entered an order granting the motion of the Liquidating Trustee of Radianse, Craig R. Jalbert, to be substituted for Radianse as the appellee.

equipment, patients, and staff, to hospitals and other healthcare providers. Versus also develops and markets location systems for healthcare institutions. On September 3, 2004, Versus filed a patent infringement suit against Radianse in the United States District Court for the District of Delaware, and Radianse counterclaimed.

In April of 2006, the parties settled the patent infringement suit. The settlement agreement included a license agreement (the Versus License), which granted Radianse a non-exclusive license for "all products relating to indoor positioning systems that make use of infrared (IR) technology for location purposes (IR Location Systems) in the form heretofore employed by Radianse or equivalents thereto." Versus License § 1.1. Under the Versus License, Radianse was required to make two types of payments to Versus: (a) a $250,000 cash payment, to be paid in three equal installments; and (b) "a three percent royalty on the Net Sales of the Licensed Products." *Id*. §§ 3.1-3.2.

On October 17, 2008, Radianse entered into a Reseller Agreement with Hill-Rom Company, Inc. (Hill-Rom). Under this agreement, Hill-Rom paid Radianse a $3 million "Initial Fee." The Initial Fee was allocated as follows: (a) ten dollars as payment for a non-exclusive and limited license of certain patents related to the Radianse RTLS products (the Patent License Fee); and (b) $2,999,990 as a non-refundable "Product Prepayment" for "Radianse Products" ordered by Hill-Rom. The Reseller Agreement further provided that the allocation of the $3 million Initial Fee

between the $10 Patent License Fee and the $2.99 million Product Prepayment was "adjustable" and "variable." Reseller Agreement § 7.3.

For the first eighteen months following the effective date of the Reseller Agreement (the "Product Payment Validity Period"), Hill-Rom could apply the $2.99 million Product Prepayment to any purchase of the Radianse products and services listed in Exhibit A of the Reseller Agreement. *Id.* at § 7.1. The Reseller Agreement further provided that once the Product Payment Validity Period expired on April 17, 2010, "the Product Prepayment shall be deemed to have been exhausted, and shall therefore equal zero." *Id.* § 7.3(i)(c). It is undisputed that Hill-Rom never ordered any Radianse products or services, and thus, the Product Prepayment was never applied to offset the cost of any purchases from Radianse.

On April 20, 2010, Radianse filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Massachusetts. Eight days later, Radianse filed a motion seeking authorization to sell its assets (the Sale Motion). Among the transactions contemplated in the Sale Motion was the assumption and assignment of the Versus License. Prior to any assumption and assignment, Radianse was obligated to pay Versus any outstanding license fees. Radianse calculated these "cure costs" to amount to $16,323, none of which related to any sale of products or services to Hill-Rom. On May 26, 2010, Versus filed a limited objection to Radianse's

Sale Motion, contending that Radianse's calculation of the cure costs incorrectly omitted its three percent royalty on the $2.99 million Product Prepayment.

On June 4, 2010, the Bankruptcy Court entered an order approving the sale of Radianse's assets, including the rights to the Versus License, to BL Technologies, LLC. The Bankruptcy Court reserved all parties' rights with respect to Versus' limited objection to Radianse's calculation of the cure costs. On September 15, 2010, Radianse and Versus filed a joint status report requesting that the Bankruptcy Court consider Versus's objection on a motion for summary judgment. On October 19, 2010, Radianse moved for summary judgment, arguing that because it had never actually sold any products or services to Hill-Rom, Versus was not entitled to any royalties related to the Product Prepayment. Versus, for its part, contended that the Product Prepayment in its entirety constituted a "Net Sale" as defined by the Versus License, obligating Radianse to pay the full royalty amount.

On December 8, 2010, the Bankruptcy Court granted Radianse's motion for summary judgment. In a ruling from the bench, United States Bankruptcy Judge Melvin S. Hoffman concluded that "the Hill-Rom transaction did not trigger a royalty obligation to Versus because it was not, at the time the money came in, a sale as contemplated by the [Versus] license agreement." December 8, 2010 Hr'g Tr. at 34. On January 7, 2011, Versus filed a motion for leave to appeal the Bankruptcy Court's

decision, which this court granted on February 1, 2011.

## DISCUSSION

In reviewing a bankruptcy court's summary judgment determination, a district court applies a de novo standard of review. *See In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001); *Wyner v. N. Am. Specialty Ins. Co.*, 78 F.3d 752, 754 (1st Cir. 1996). When hearing an appeal from a decision of a bankruptcy court, a district court looks to the evidentiary record compiled below. *In re Colonial Mortg. Bankers Corp.*, 186 F.3d 46, 49 (1st Cir. 1999).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To succeed on a motion for summary judgment, "the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." *Id*. The nonmoving party "must adduce specific, provable facts demonstrating that there is a triable issue." *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

Versus argues that the Bankruptcy Court erred in exonerating Radianse from payment of the additional cure cost. Versus contends that Radianse's receipt of the $2.99 million Product Prepayment from Hill-Rom constituted a "Net Sale," entitling it to an $89,999.70 royalty, which was due upon Radianse's receipt of the Prepayment. In support of its argument, Versus maintains that the definition of "Net Sales" in the Versus License "broadly encompasses payments made for future shipments, whether or not they occurred." Appellant Reply Br. at 9. Thus, Versus argues, Radianse is not exempted from paying a royalty on the Prepayment "simply because Hill-Rom never issued a purchase order and Radianse never had to ship product." *Id.* at 6.

The Versus License provides that Versus is entitled to a three percent royalty payment on "the Net Sales of the Licensed Products." Versus License § 3.2. "Net Sales" is defined as "the gross amount received by [Radianse] for the sale or transfer for value of Royalty Products," less certain costs and expenses such as taxes, customs duties, transportation costs, credits, rebates, and refunds. *Id.* § 1.2. This definition, as the Trustee argues, accords with generally accepted meanings of the terms "sale" and

"net sale."[2] *See, e.g.*, U.C.C. § 2-106(1) ("A 'sale' consists in the passing of title from the seller to the buyer for a price."); *Black's Law Dictionary* (9th ed. 2009) (defining "sale" as "[t]he transfer of property or title for a price," and "net sale" as "[t]he amount of money remaining from a sale, after deducting returns, allowances, rebates, discounts, and other expenses."). As the Trustee argues, there would be no reason for the Versus License to carefully define "Net Sales" and specify relevant deductions if the parties intended that royalties were due immediately upon Radianse's receipt of the Product Prepayment.[3]

Under the Reseller Agreement, "[t]itle to Radianse Products will and hereby does pass to [Hill-Rom] upon shipment, except that, while the Product Prepayment remains outstanding, title to Custom Radianse Products will and hereby does pass to

---

[2] The Versus License is governed by Delaware law. Versus License § 7.1. The Reseller Agreement is governed by New York law. Reseller Agreement § 15.3. The Trustee asserts that "[r]esolution of this dispute does not require any choice of law determination as the U.C.C. is substantially similar in New York and Delaware, and the law on sales as interpreted by both states' courts is also similar." Appellee Br. at 15 n.5. Versus does not dispute this assertion.

[3] The Trustee raises additional arguments bolstering his position. For example, he notes that the reporting and record-keeping requirements of the Versus License contemplated that royalties would be based on the actual sale of Licensed Products. *See* Versus License § 3.3 (requiring Radianse to submit to Versus written reports of all Net Sales of Licensed Products, and to make royalty payments to Versus, "[w]ithin sixty (60) days after the end of each calendar year following the first sale of a Licensed Product"); *id.* § 3.4 (requiring Radianse to "keep records showing the amount of Licensed Product sold or otherwise transferred to third parties").

[Hill-Rom] upon manufacture." Reseller Agreement § 6.3. The parties do not dispute that Hill-Rom never ordered, and Radianse never manufactured or shipped, any Radianse products to Hill-Rom.[4] Therefore, no transfer of title to products occurred between Radianse and Hill-Rom. In the absence of a transfer of title, the Bankruptcy Court correctly determined that Radianse's transaction with Hill-Rom was not a "sale" as contemplated by the Versus License, and thus Radianse had no obligation to pay a Prepayment royalty to Versus.[5]

## ORDER

For the foregoing reasons, the Bankruptcy Court's grant of summary judgment is <u>AFFIRMED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____

---

[4] As the Trustee points out, there is no windfall to Radianse because the parties anticipated that the Product Prepayment might not be applied to offset the cost of purchases from Radianse. *See* Reseller Agreement § 7.3(i)(c)-(d) (stating that upon expiration of the Product Payment Validity Period, the Product Prepayment shall be deemed to have been exhausted, and any remainder reallocated to the Patent License Fee).

[5] Moreover, as the Bankruptcy Court noted, the Reseller Agreement "makes it abundantly clear that the possible allocation of [the] [P]re-payment could very well be made to purchases or obligations other than the sale of product." December 8, 2010 Hr'g Tr. at 34-35. Thus, in the absence of an actual sale, it would be impossible to calculate the amount of any royalty payment owed to Versus.

UNITED STATES DISTRICT JUDGE